*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SARAH ELIZABETH SYKES,

      Defendant-Appellant.

FOR PUBLICATION
June 17, 2026
12:08 PM

No. 367133
Washtenaw Circuit Court
LC No. 2006-001231-FC

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

CAMERON, P.J. *(concurring)*.

I concur with the majority's analysis and conclusion. I write separately to identify the weakness of a factual assumption implicit in defendant's constitutional argument. Underlying defendant's cruel-or-unusual-punishment argument is her concern that her parolable life sentence will, in fact, result in her serving a life sentence, or its functional equivalent. Her argument rests on the generalized assumption that, historically, parole in these cases is rarely granted. In other words, defendant appears to ask this Court to accept the proposition that the Parole Board takes a harsh "life means life" approach that makes the chance for parole extremely remote. I believe this outdated assumption fails to account for changing attitudes (and membership) of the present-day Parole Board and overlooks the reality that parole grants for parolable lifers have increased significantly in recent years. If the Parole Board did have a "life means life" policy, the evidence shows that it abandoned such a policy many years ago.

The Michigan Department of Corrections (MDOC) does not publish information about the annual parole rate for criminal defendants serving parolable life sentences. Nor does it disclose data from which the public, or a court, could ascertain such a rate.[1] The best evidence of the Parole Board's current approach to defendants serving parolable life sentences comes from the Michigan Department of Attorney General (the Attorney General). The Attorney General recently scoured

---

[1] If the data was available, the calculation of an annual parole rate for these defendants would be straightforward: the number of parole grants given to parolable-life defendants compared to all parolable-life defendants reviewed for parole for that particular year.

MDOC parole data and provided our Supreme Court with the most recent, in-depth look at the statistical shift in parole grants for defendants serving parolable life sentences in Michigan. In its amicus brief in *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022), the Attorney General explained that "the number of total parole grants that occur each year has increased forty-fold from the period of 1995-2004 to 2016-2021 (from two paroles to 82 paroles per year on average)." Indeed, the shift toward granting parole has accelerated for the most recent years reported. For instance, the percentage of parole grants increased from an average of 7% between 2011 and 2016 to 16.67% between 2016 and 2021. This data shows that a parolable life sentence, while unquestionably serious, no longer carries the same weight in terms of expected severity.

These changes reflect the Parole Board's evolving attitude toward parole, its exercise of discretion, and, indirectly, policy preferences appropriate for the Executive Branch. Of course, the actual sentence served in any particular case will (and should) vary depending on the Board's assessment of factors unique to the offender and offense. But to the extent we attempt to broadly describe the practical meaning of a parolable life sentence, courts should recognize and acknowledge that the evidence shows that defendants sentenced to parolable life are reviewed for parole every five years, MCL 791.234(9)(b), and are currently far more likely to be granted parole when compared to prior decades.

Defendant's constitutional argument must be viewed within this context. Defendant has been incarcerated for 20 years for the murder of two people. According to defense counsel, defendant will be reviewed for parole within two years. As shown, defendant has a greater chance than ever before to be released on parole. Given "the seriousness of the circumstances surrounding the offense and the offender[,]" *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017) (quotation marks and citation omitted), I believe defendant's sentence is entirely reasonable, particularly when considered in light of the Parole Board's increasing willingness to grant parole in these cases.[2]

/s/ Thomas C. Cameron

---

[2] I also note that, as further evidence of the proportionality of her sentence, defendant was charged with open murder, but the trial court found her guilty of second-degree murder. During sentencing, the trial court expressly considered defendant's age and how her youthful impulsiveness led to the murders in this case.